Our fourth case for this morning is Israel Ramirez v. United States and Chagall. May it please the Court, my name is Yelena Chagall, and I represent Appellant Israel Ramirez. Mr. Ramirez's guidelines range was increased by approximately a decade because trial counsel failed to object to his classification as a pre-offender. Habeas counsel then failed to attach the Texas records that would show that this was incorrect. The question here is whether the district court abused his discretion in ignoring Habeas counsel's errors. In light of Tribuno and Martinez, he did. Tribuno and Martinez instructed for defendants like Mr. Ramirez who have to wait until Habeas review to raise their ineffective assistance of trial counsel claims. Well, could I interrupt there and say, of course, those cases, Tribuno and Martinez, arise in the 2254 context. Massaro says that you may wait for a 2255, or actually, yeah, for 2255. It doesn't say you have to, and every so often, I would say it's once in a blue moon, but every so often there is enough of a, and we just had a blue moon actually, there's enough of a record so that on direct appeal, sometimes counsel will change immediately at the end and there'll be a full hearing on a Rule 33 motion or something of the sort. So, I want to know how important it is that there is a bit of an option in the federal system to wait until the 2255 to raise an ineffectiveness argument. Although after Massaro, defendants can raise ineffective assistance of counsel claims on direct appeal. This court had explained that only the rarest of cases would allow that, and that's partly because there needs to be a development on the record for a lot of the claims, and that's exactly what happened here. Mr. Amir's needed to add to the record to show that he received ineffective assistance of counsel. Right. Now, we've in fact been very critical of people who've raised ineffectiveness claims on direct appeal, so you would say that that's the, so if at least it appears to be the kind of case that needs record development, that there actually is no choice and you have to wait to 2255. Right. Like the defendants in Trivena, like the Texas system, the defendants in the federal system only under the rarest circumstances could raise their ineffective assistance of claim, ineffective assistance of counsel claims on direct appeal, and Mr. Amir's couldn't have done so here. Martinez in Trivena also instructs that for defendants like Mr. Amir's, the habeas proceeding is going to be the functional equivalent of their first-year appellate review. But let me go back still to this other point. The Eighth Circuit, at least, seems to have disagreed with the position that you're taking in the United States against Lee case. The Eighth Circuit is taking a different position, but we think this court should reject it for at least two reasons. First, Lee seems to describe Trivena and Martinez as cases that really are looking to whether the ineffective assistance of counsel claim was raised properly in the first habeas proceeding. Now, that's problematic for two reasons. First, that didn't actually happen in Trivena and Martinez. In Martinez, the district court didn't reach the merits, and in Trivena, the district court actually concluded that there were no merits to the ineffective assistance of counsel claim. More importantly, the principles animating in Trivena and Martinez were not whether the ineffective assistance claim was actually properly raised, but what effect habeas counsel's errors have, and that habeas counsel's errors really prevented meaningful review. That's really what happened here. Mr. Ramirez's trial counsel failed to object to his classification, and this court, in affirming his sentence, explained that the silent record doomed his appeal. Habeas counsel then failed to include these same Texas records. Moreover, habeas counsel failed to provide the 2258 motion to Mr. Ramirez or the government's response, which would have informed him that the records weren't included. So, do you have any explanation for why it was so hard for him to get these records from Udallago County? Well, he tried to get them. He did try to get them, and they sent this long thing saying that they weren't going to give them to him, right? I don't know why that happened. I didn't have problems obtaining the records that were included. I think that it looks like the district attorney just didn't want to help him out, and he felt like the records weren't going to help him, or the district attorney didn't want to help him, so he was going to do what was necessary to prevent him from getting the records. So, on that last topic, the other thing I wanted to hear your additional statements about is the government looks at these records, and they say, well, maybe all the rest of this was a problem, but once you look at the records, you can see that he was beating up, you know, this woman, and that they are, in fact, crimes of violence. The government's position, which asks this court to apply a factual approach, should be rejected for several reasons. First, we don't think the police reports are something the district court could have looked at. It's not within the narrow class of materials that the district court can review in determining whether he was a career offender, but even assuming that the district court could look at them, Mr. Ramirez would still prevail. All those police reports show is that he could have pleaded guilty under the reckless prong, or he could have pleaded guilty under the purposeful prongs, but the only thing that counts for the career offender guidelines is what he actually pleaded guilty to. This court actually described an analogous scenario in Woods, where somebody shoots into a crowd. One prosecutor might charge him with reckless endangerment. Another prosecutor might charge the same person with aggravated assault with intent to cause bodily injury. But this court explained that for purposes of the career sentencing guidelines, only the latter conviction would count, because the only thing that counts is what the defendant was actually convicted of. Here, the Texas records don't show what he was actually convicted of. It just shows the potential, still, of the crime of violence. So if Mr. Ramirez's trial counsel had objected, the government would have had to proceed on an ambiguous record, and it could not have prevailed. It would have been its burden to show, clearly, that he pleaded under the purposeful prong. It couldn't have done that, and so Mr. Ramirez would have prevailed. Thus, he would have been able to show that he was prejudiced. I think this is an example where habeas counsel's errors really did prevent meaningful review and undermine the integrity of the proceeding. The government doesn't dispute that the district court's categorical approach and disregard for habeas counsel's errors really raises serious constitutional concerns. The government also isn't disputing that Mr. Ramirez really couldn't have gotten those records. So to say that he should have included the Texas records is asking him to do something that he could not comply with. The only thing the government is arguing here is that the Texas records would show that he has intentionally assaulted his wife, but as we've explained, it doesn't matter what he did. The only thing that matters is what he was actually convicted of. If there are no more questions, I'd like to reserve the rest of my time for about a minute. That would be fine. Thank you. Mr. Clark. I'm making you work for a living today, Mr. Clark. They are. They are. At least this one is my case. Okay. Actually, it wasn't originally, but I have been involved in it substantially since then. At any rate, first of all, by way of example only, I'd like to direct the court's attention briefly to the Texas count from the second case that was dismissed in that case from August 9th. That count is set forth in Government Appendix 25. It charged the defendant with reckless assault on his young son who was injured when defendant assaulted Griselda Ramirez, who was holding the child. Now, he was charged only with reckless assault under 22.01, but if he had been charged in that count with intentional or reckless conduct, we would look at the facts and say that it not intentional. He didn't intend the consequences of his act. What we have here is something entirely different. It's just the opposite. The facts here clearly show that the defendant was convicted under the intentional prong. It doesn't show, though. I mean, certainly the charge on the page before the one you're talking about just says intentionally, knowingly, or recklessly, and of course, what I'm thinking of is when you have statutes like that, people are often convicted on a lesser count. Sometimes it's the result of a plea bargain or the like. This statute allows three different states of mind, and I mean, all of us, looking at the facts that you've presented, you know, might think, oh, well, you know, how can this be anything but intentional, but on the other hand, prosecutors charge all the time less than maybe the maximum they possibly could, so I don't see how we can take the facts, superimpose this statute, and say we know for sure it wasn't the recklessness branch. Okay. So, first of all, I would suggest that one reason for charging it the way they did is if they had gotten to trial, they could have argued for a lesser included offense. But the point, we have to deal with what they did, though. They charge all three. Sure. And what I'm suggesting is that the defendant here stipulated to evidence, and he didn't offer any counter-evidence, and he didn't even argue. But his stipulation to the evidence tells you what he did. It doesn't tell you whether he did it intentionally, knowingly, or recklessly. This is a man, apparently, with a huge alcohol problem. There are all sorts of facts that I think we would have to get into exactly the kind of mini-trial that the Supreme Court has said is inappropriate to know how that set of facts maps onto the statutory offenses. And I would agree with you that that is one concern that the court does have in that regard. But here, the facts are not contested. But they don't, they may not be contested, but which state of mind is proper on those inference from his description of what he stipulated to about state of mind? And I'm saying, I don't see that it's there. Well, I respectfully disagree because it appears to me that all the facts point to deliberate intentional conduct by the defendant. There's nothing in there indicating reckless conduct with respect to Criselda Ramirez. Well, because you're assuming he's not drunk, you're assuming, you know, all sorts of things, that he even remembers that he did it. Well, I don't believe that the, even if he were drunk, that that would affect the matter because that's not a defense. I wasn't saying it was a defense. I'm just saying, is this reckless? Is this intentional? Is this knowing? What we've tried to stay away from is delving into the facts. We've tried to say, you have to, and under the Supreme Court's authority, you need to know which offense was the final offense of conviction. And it's not clear to me that the prosecutor wouldn't have pleaded this down to the recklessness. I mean, he just sort of gets this generic all three, and we don't know which offense it was. I agree that that's what the statement is with respect to the indictment and the ultimate lead. And the judgment of conviction, too. If the judgment of conviction had looked different, we wouldn't even be here, probably. Right. I agree. But again, I believe that all of the conduct that he stipulated to, that he stipulated to evidence, all the conduct in the evidence Do you have a single case that has used conduct in that way to help disambiguate among different, you know, divisible statute? I believe, yes, you can use judicial admissions. No, but if the admission is, I did this intentionally, that's one thing. But that's not what he's doing. He says, I did these things. Okay. Well, it appears to me, from the way he stipulated to these facts, and they weren't contested, that he was stipulating to conduct that was intentional. And your position has to be, could only have been. It's not quite the same as a guilty plea. That's the problem. You know, a plea colloquy where the government says, you know, what evidence would the government put on, blah, blah, blah, and everybody goes through that. That is correct. So, turning briefly to Martinez and Trevino, the rights to counsel in those proceedings were, in those cases were extremely narrowly tailored and do not apply to 2255s. Where do you get that? I mean, the Supreme Court usually equates 2254 and 2255 for purposes of post-conviction matters. Yes, but in both Martinez and Trevino, the court talks about restricting it to cases involving initial review states where there are 2254s involved. But we don't. I mean, this court, as you probably know, has been extremely hard on people who try to raise ineffectiveness of counsel arguments on direct appeal. Correct. We lecture them endlessly and say, you know, you don't have a full record. You should wait. Do this at the 2255 stage. But that's not the same as barring it by statute. It pretty much is the same, in which we're saying that you don't have the legal ability to raise this because there's no record. Well, no, there is. And Massaro says it's fine to wait. The cases do not talk about – well, let me back up. What you have said also is that you will not be paternalistic in terms of determining whether or not. No, every now and then we allow somebody to throw away an ineffective assistance claim because they foolishly raised it on a direct appeal. And so it's not an out-and-out prohibition, and that is the point. Whereas in the initial review cases, those matters were statutorily barred. That's the difference. In federal cases, there's no procedural default if he doesn't raise ineffective assistance of counsel on direct appeal. He can bring it in collateral review. And that's different from a 2254. If you're going to apply that to cases in which matters outside the trial record need to be consulted, I would have a real problem. If this happened to be one of those rare cases in which the whole point is matters that are already on the record, maybe the line you're drawing makes some sense. I don't think that's this case. I'd like to just point to the fact that this is a statutory remedy. The 2255 is a statutory remedy. It's not a constitutional matter in itself. The practical effect here, if she's right, the practical effect is that you will need to be appointing counsel on every single 2255 case. Well, if it involves ineffective assistance. Yes, if it involves ineffective assistance of counsel, which a large majority of the cases do. I guess you're pointing out the process of going back to ground zero would be a long process, wouldn't it? I mean, we're here on a 60B motion, right? It has been a long process already, yes, Your Honor. So I guess that's complicated, but it may be the only way to claim it's extraordinary and go back to what should have been done. And it may have been if what should have been done in the first place, as Judge Wood points out, we wouldn't even be here. But that didn't happen, so we don't know whether it's this reckless issue is even available. We look at the facts, whichever those were conjured up, and, yeah, it looks like it's pretty bad. But that wasn't really what we had at this juncture. So that's my problem with this complicated procedure that we've got to figure out. It seems to me it's the Supreme Court that threw us into this briar patch because before Trevino and Martinez, there was a pretty clear-cut rule that you didn't have a right to effective assistance of counsel at the 2254 or 55 stage. It was a civil proceeding, and we dismissed any number of cases that way. But the Supreme Court has made it a more nuanced inquiry, and obviously we have to follow that. The 2254 is one briar patch. Well, I understand that's your position. That may or may not. We'll see. Thank you, Bill. Thank you, Your Honor. Okay, anything further, Ms. Chagall? Yes. I wanted to address three issues that were raised by counsel. First, he said that the Martinez-Trevino cases only apply to situations where a defendant is statutorily prohibited from raising his ineffective assistance of counsel claim until habeas tribune, and that's actually not the case. Trevino specifically extends Martinez to situations like the federal system where the defendant, for practical reasons, can't raise their ineffective assistance of counsel claim, partly here because they couldn't create a full record. The other thing we wanted to highlight is that Mr. Ramirez is not asking this court to recognize a constitutional right to counsel on habeas tribune. All he's asking for is the opportunity to explain that on 60B, habeas counsel's errors allow him to reopen the 2255 proceeding. And the last point I wanted to make is that even assuming that the police reports are something that the district court could have looked at, the key here and what this court has emphasized in Woods and then the Supreme Court reiterated in Decomp, is that it doesn't matter what the defendant did. The career offender guidelines look to what he was actually convicted of. Here, the record is ambiguous, and therefore, the government could not have prevailed had trial counsel objected. Thank you. All right, thank you. And you were appointed, were you not? We appreciate your assistance to your client and to the court, and thanks, of course, as well to the government. We'll take the case under advisement.